LOUISVILLE ASPHALT VARNISH COMPANY v.
LORICK & LOWRANCE.

Under verbal instructions from defendant, plaintiff's salesman sent a writ-
ten order to plaintiff to ship to defendant a certain amount of paint,
exceeding fifty dollars' worth, at a stated price, payable in sixty days.
The goods were accordingly shipped, after which plaintiff received a
letter signed by defendant, saying : "Don't ship paint ordered through
your salesman ; we have concluded not to handle it." *Held*, that the
two papers taken together, constituted a sufficient memorandum in
writing signed by defendant, to charge him with a contract of sale.

Before PRESSLEY, J., Richland, October, 1886.

The opinion fully states the case.

*Messrs. Bachman & Youmans*, for appellants.

*Mr. S. W. Melton*, contra.

November 27, 1888.   The opinion of the court was delivered by
MR. JUSTICE McIVER.   This was an action to recover the
sum of eighty-three dollars and five cents, the price of certain
varnish and paint alleged to have been sold by plaintiff to
defendants.   The defence was a general denial.   At the trial
the plaintiff offered testimony tending to show that on the 16th
October, 1885, one of its travelling salesmen, Hutchinson by
name, took from Moore, a clerk of defendants, who, it was
admitted, had authority to give the order, a verbal order for the
articles specified in the account sued on, which Hutchinson
immediately entered in his memorandum book as follows :

"No. 65.
                              "COLUMBIA, S. C., Oct. 16, 1885.
*"Louisville Asphalt Varnish Co., Louisville, Ky.—*
   "Ship Lorick & Lowrance, Columbia, S. C.:
"  1 bbl. No. 1 Turpt. Asphalt Black Varnish,            55c.
"  1  "   D. Roof Paint C,                               50c.
"12 5-gall. Pails D. Roof do.,                           55c.
      "Cr. by 2c gal. on acct. freight.
      "60 days.
                              "H. L. HUTCHINSON, Salesman."

On the same day a copy of this order was sent by mail by
said salesman to the plaintiff, who received it on the 19th Octo-
ber, 1885, and on the next day shipped the goods, by rail, to
defendants.   On the 17th October, 1885, the defendants wrote
to plaintiff as follows :

*"Louisville Asphalt Varnish Co., Louisville—*
   "Gents :   Don't ship paint ordered through your salesman.
We have concluded not to handle it."

This letter, however, was not received by plaintiff until after
the goods had been shipped ; and upon its receipt plaintiff wrote

defendants, saying, "That the shipment had gone before the request to cancel was received." When the goods arrived in Columbia the defendants declined to receive them, but what became of them, the testimony does not show.

At the close of plaintiff's testimony defendants moved for a non-suit, which was granted upon the ground that section 2020, General Statutes, (Statute of Frauds) was fatal to a recovery. Plaintiff appeals upon the several grounds set out in the record, which make these two questions :   1st. Whether there was such a note or memorandum in writing of the bargain as would satisfy the requirements of section 2020 of the General Statutes.   2nd. If not, whether there was such an acceptance and actual receipt of the goods as would take the case out of the operation of that section.

It is quite certain that there was no formal agreement in writing, signed by the parties to be charged, for the sale of the goods in question, and we think it equally certain that there was no *single* instrument or memorandum in writing sufficient to satisfy the requirements of the statuté ; for the letter of the defendants, copied above, did not specify the necessary particulars as to quantity, nature, and price of the goods, which were the subjects of the alleged contract of sale, and the copy of the order sent by the salesman to the plaintiff, which did contain all the necessary particulars, was not signed by the defendants.   It is plain, therefore, that neither one of these papers, standing alone, would be sufficient.   But as it is well settled that the whole agreement need not appear in a single writing, but may be made out from several instruments or written memoranda, referring one to the other, and which, when connected together, are found to contain all the necessary elements, the precise, practical question in this case is whether the letter of defendants can be connected with the written order sent by the salesman, so that the two together may constitute a sufficient note or memorandum in writing to satisfy the requirements of the statute.

In *Saunderson* v. *Jackson* (2 Bos. & Pul., 238), the action was for not delivering certain articles alleged to have been sold by defendant to plaintiff, and the question was whether there was a sufficient note or memorandum in writing of the bargain under

the statute of frauds. It seems that when the plaintiff gave the verbal order for the goods he was furnished by the defendant with a bill of parcels, not signed, but written on a piece of paper with a printed heading containing the name and place of business of defendant. Shortly after this, defendant wrote a letter to plaintiff, saying, "we wish to know what time we shall send you a part of your order," &c. The court held that the requirements of the statute were complied with, saying: "This bill of parcels, though not the contract itself, may amount to a note or memorandum of the contract within the meaning of the statute. * * * At all events, connecting this bill of parcels with the subsequent letter of the defendants, I think the case is clearly taken out of the statute of frauds. For although it be admitted that the letter, which does not state the terms of the agreement, would not alone have been sufficient, yet as the jury have connected it with something which does, and the letter is signed by the defendants, there is then a written note or memorandum of the order which was originally given by the plaintiff, signed by the defendants."

This case has been expressly recognized and followed in this State, in *Toomer* v. *Dawson*, Cheves, 68. The same doctrine was applied in *Western* v. *Russell*, 3 Ves. & B., 188. See, also, to the same effect, *Drury* v. *Young* (58 Md., 546 ; S. C., 42 Am. Rep., 343), where, as in the case now under consideration, the letter of defendant was written for the purpose of withdrawing from the contract, but as it referred to the previous order, the two taken together were held to satisfy the terms of the statute. In a note to that case, at page 347 of the volume of American Reports above cited, we find the following: In *Cave* v. *Hastings* (7 Q. B. D., 123), an action for breach of a contract for the hire of a carriage for more than a year from the date of the agreement, at a specified sum per month, it was proved that the plaintiff agreed to let the carriage to the defendant; a memorandum of the terms of the agreement was signed by the plaintiff, but not by the defendant. The defendant subsequently wrote a letter to the plaintiff desiring to terminate the agreement, in which he referred to "our arrangement for the hire of your carriage," and "my monthly payment." There was no

other arrangement between the parties to which the expressions of the defendant could have any reference except the agreement contained in the memorandum signed by the plaintiff. Held, that the letter of the defendant was so connected by reference to the document containing the terms of the arrangement as to constitute it a note and memorandum of the contract signed by him, within the fourth section of the statute of frauds.

The court said : "There is abundant evidence that there was an agreement which was not rescinded ; but the defendant now contends that he is not liable because he signed no memorandum in writing of the contract. It has, however, been long settled that the whole agreement need not appear in one document, but the agreement may be made out from several documents. The only document signed in this case by the defendant was the letter of the 11th February, which does not, in itself, contain the terms of the contract. In *Dobell* v. *Hutchinson* (3 Ad. & E., 355), Lord Denman states the law on this subject to be as follows : 'The cases on the subject are not, at first sight, uniform ; but on examination it will be found that they establish this principle, that when a contract or note exists which binds one party, any subsequent note in writing signed by the other is sufficient to bind him, provided it either contains in itself the terms of the contract, or refers to any writing which contains them.' This letter in question refers to 'our arrangement.' Mr. Cully, in his argument, contended that that might refer to some other and different parol arrangement ; but it seems to us, that this reference to the former document is sufficient, in accordance with the principle laid down in *Ridgeway* v. *Horton, ubi sup.*, where 'instructions' were referred to, and it was held that parol evidence might be given to identify the instructions referred to, with certain instructions in writing. This principle was applied in *Bauman* v. *James* 16 L. T. Rep. (N. S.), 165, and carried still further in *Long* v. *Millar*, 41 *Id.*, 306, in which Bramwell, L. J., says : 'The first question to be considered is whether there is a contract valid according to the provisions of the statute of frauds, section 4. I think that there is a sufficient memorandum. The plaintiff has signed a document containing all the terms necessary to constitute a binding agreement, so that if he committed a breach

of it, he would be liable to an action for damages, or to a suit for specific performance. But the point to be established by the plaintiff is that the defendant has bound himself, and a receipt was put in evidence signed by him, and containing the name of the plaintiff, the amount of the deposit, and some description of the land so'd. The receipt also uses the word "purchase," which must mean an agreement to purchase, and it becomes apparent that the agreement alluded to is the agreement signed by the plaintiff, so soon as the two documents are placed side by side. The agreement referred to may be identified by parol evidence.' He then goes on to add : 'I may further illustrate my view by putting the following cases : Suppose that A writes to B, saying that he will give £1,000 for B's estate, and at the same time states the terms in detail, and suppose that B simply writes back in return, "I accept your offer." In that case there may be an identification of the documents by parol evidence, and it may be shown that the offer alluded to by B is that made by A. without infringing the statute of frauds, section 4, which requires a note or memorandum in writing.' "

These observations, coming as they do from high authority, seem so appropriate to the present case that we have felt justified in inserting them at length. In *Beckwith* v. *Talbot* (95 U. S., 269), it was held that while the general rule is, "that collateral papers, adduced to supply the defect of signature of a written agreement, under the statute of frauds, should, on their face, sufficiently demonstrate their reference to such agreement without the aid of parol proof," yet such rule is not absolute, as "there may be cases in which it would be a violation of reason and common sense to ignore a reference which derives its significance from such proof." Accordingly it was held in that case that "the defendant, unless he could show the existence of some other agreement, was estopped from denying that the agreement referred to by him in his letters was that which he induced the plaintiff to sign." Even in the case of *Johnson* v. *Buck* (35 N. J., 338; S. C., 10 Am. Rep., 243), which seems to be much relied on by the counsel for respondents, it is conceded that parol evidence may be received "to identify papers which, by a reference in the signed memorandum, are made parts of it." While it is true that some

of the cases which we have cited arose under the 4th section of the statute of frauds, and not under the 17th section, which controls the present case, yet it is admitted by Kent, C. J., in *Bailey* v. *Ogdens* (3 Johns., 412), that the words of the two sections are in this respect similar, and require the same construction; and it was so held in *Townsend* v. *Hargraves*, 118 Mass., 325.

It seems to us, therefore, that the letter of defendants, taken, as it must be, in connection with the order sent to plaintiffs by the salesman, to which it expressly referred, and which was in writing, and specified all the necessary particulars as to price, quantity, quality, and time of payment, constituted a sufficient note or memorandum in writing of the bargain to take the case out of the statute of frauds. In the absence of any evidence that any other order was given, the language of the letter—"Don't ship paint ordered through your salesman"—must necessarily be regarded as referring to the order of which a memorandum in writing was taken at the time by the salesman, and a copy thereof immediately forwarded to the plaintiff, who at once filled the order and shipped the goods to the defendants. This is a stronger case than that of *Beckwith* v. *Talbot*, *supra*, for there the letter of the defendant simply referred to the agreement, without indicating when or how it had been made, while here the letter refers to a particular article *"ordered through your salesman,"* and we hear of no other order through the salesman or in any other way. The only necessity for any parol evidence at all (if, indeed, there was any) was to identify the order sent by the salesman, and for this purpose, as we have seen, such evidence would be competent.

Suppose the plaintiff had, on the 16th October, 1885, written a letter to defendants, proposing to sell them the articles mentioned in the salesman's order, in the quantities there stated, and at the prices and on the time there mentioned, and that defendants had replied by letter, simply saying, "I accept your offer," without repeating the particulars as to quantity, price, &c., it could not be doubted that although defendants' letter—the only paper which they signed—did not contain in itself the necessary particulars of the bargain, yet the two letters, taken together, would

be held a sufficient compliance with the statute. It seems to us that the transaction here in question was, in principle, practically the same as that in the supposed case, and we think there was error in holding that the contract sued on was void under the statute of fraud.

We do not see how it is possible to regard the letter of the defendants as a *denial* of the order given to the salesman by their clerk, Moore, who, it was conceded, had authority to give the order; for the only testimony upon the subject is that of the salesman, who says distinctly that Moore gave him the order, and he entered it in his memorandum book, and there is no evidence to the contrary. Moore was not examined as a witness. It is true that, *after the controversy between these parties had arisen*, the defendants, in a letter as late as 31st December, 1885, addressed to the attorney who had been consulted by the plaintiff, do repudiate the purchase, but that is not the letter relied upon by plaintiff to establish the contract. On the contrary, the one relied on is that of the 17th October, 1885, which has been copied above, and the question is, whether the last mentioned letter can be regarded as a denial of having given the order. The manifest purpose of that letter was to *countermand* the order, and this necessarily presupposed that the order had been given. The terms used clearly show this—"Don't ship the paint *ordered* through your salesman. We have concluded not to handle it." This clearly means that the paint had been *ordered*, but that defendants had subsequently changed their minds and "*concluded* not to handle it;" and we don't see how it can be construed to mean anything else. We have, then, an admission in writing that an order for the goods in question through the salesman had been given, and we have the order referred to likewise in writing, and the two together fully satisfy the requirements of the statute.

Under the view which we have taken of the first question raised by this appeal, the second question becomes immaterial, and need not therefore be considered.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.

MR. JUSTICE McGOWAN concurred.

MR. CHIEF JUSTICE SIMPSON, *dissenting.* The plaintiff brought the action below to recover the sum of eighty-three 95–100 dollars, alleged to be due for certain paints, claimed to have been sold defendants by the plaintiff. The defendants denied the purchase of said paints. At the trial the plaintiff offered testimony showing that a travelling salesman of plaintiff called at the place of business of defendants in Columbia, and after an interview with one Moore, a clerk of defendants, who had power to make purchases of the kind mentioned, entered on an order in his memorandum book as follows: "No. 65. Columbia, S. C., Octo. 16, 1885. Louisville Asphalt Varnish Company, Louisville, Ky.

"Ship Lorick & Lowrance, Columbia, S. C.

| | |
|---|---|
| "1 Bl. 1 Turpt. Asphalt Black Varnish, | 55c |
| "1 " D. Roof Paint c., | 50c |
| "12. 5 gal. Pails D. Roof do., | 55c |

"Cr., by 2c gal. on acct. freight.
"60 days. H. L. Hutchinson, Salesman"—
embracing the goods which Hutchinson swore he sold to defendants through their agent, Moore. A copy of this order was immediately sent to plaintiffs, at Louisville, Ky., who, on the 19th of October, put said goods up for shipment, and on the 20th of October received from Cincinnati Southern Railway a bill of lading executed in duplicate.

After this shipment, the plaintiff received a letter from Lorick & Lowrance, dated 17th of October, of which the following is a copy:

"Louisville Asphalt Varnish Company, Louisville.

"Gents. Don't ship paint ordered through your salesman. We have concluded not to handle it.

"Respty.              Lorick & Lowrance.   M."

To this the plaintiff replied, 22d October, 1885, that the goods had gone forward before receipt of defendants' letter above. The defendants then answered, denying that they had ever purchased from plaintiff, stating that one of its salesmen had visited Columbia and had offered to sell, but that their Mr. Moore had declined to purchase, and that the goods on arrival had been promptly reshipped to plaintiff.

Upon testimony of plaintiff, substantially as above, on motion of defendants a non-suit was granted, on the ground that section 2020, General Statutes, was fatal to a recovery. The plaintiff has appealed, both from the order granting the non-suit and from the judgment entered, upon the following grounds: I. That there was sufficient evidence to go to the jury, and his honor erred in holding otherwise. II. That the evidence produced by plaintiff clearly took the case out of the statute of frauds, and out of section 2020, General Statutes of this State. III. That the evidence claarly showed the acceptance of the goods sold, and the actual receipt thereof by the defendants. IV. That the evidence clearly showed the note and memorandum in writing of the bargain, signed by the agent lawfully authorized.

It is conceded that plaintiff's action was subject to the application of the statute of frauds—section 2020 of General Statutes—and the plaintiff based its right to a recovery upon a compliance with that statute in two of its requirements, to wit: 1st, that the goods after being ordered were accepted and actually received; and second, that a sufficient memorandum in writing had been made to bind the defendants. Now, the question before us is not as to the merits of the case, but simply whether enough testimony had been introduced as to one or both of the grounds above, to carry the case to a jury and prevent a non-suit. The rule as to non-suits is well understood, and we need only state here, what has often been said before, that a non-suit is proper, and in fact demandable, where there is an absence of all relevant testimony as to one or more of the material disputed issues in the case: If, however, there is testimony upon said issues, the truth, force, and effect of which is to be weighed and determined, the case must go to the jury, because under our system the jury is alone invested with power to determine disputed facts in cases at law.

As to what amounts to an acceptance and an actual receipt under the statute, see 1 *Chitty on Contracts* (11 edit.), page 555 *et seq.* We have found no pertinent testimony upon this point. His honor, in the absence of such evidence, was therefore right in holding that there was no ground upon which the case could go to the jury, in so far as this question was involved. Was there evidence of a note or memorandum in writing signed by

the defendants or their agent thereunto legally authorized, sufficient to carry the case to the jury?    There is no pretence that the order sent by plaintiff's salesman was signed by the defendants or their agent.    On the contrary, the order was prepared and sent by the plaintiff's agent, and, no doubt, was sufficient to bind the plaintiff, if it was the party sought to be charged, although the defendants might not be bound.    It is not necessary that both parties should sign the contract.    It is sufficient that the defendant, whether he be vendor or vendee, has signed the contract, and it is no objection that he has no remedy thereon against the plaintiff, inasmuch as the latter has not signed it. *Chitty Cont.* (11 edit.), 568.

It may be urged, however, that it is not necessary that the whole of the terms of the contract should be contained in one memorandum, it being sufficient if they can be collected from several distinct writings having reference to the same subject matter.    This is true, and it has been held that if, after the transaction has taken place, it be recognized in a letter written by the party to be charged, which refers to the specific contract, and not merely to the subject matter, this will satisfy the statute. *Chitty Cont.* (11 edit.), 546.    Under this principle plaintiff contends that defendants' letter, in which they wrote: "Don't ship paint ordered through your salesman.    We have concluded not to handle it," was sufficient to carry the case to the jury on the question whether a note or memorandum in writing of the contract, sufficient to comply with the statute, has been executed by the defendants.

The rule upon this subject, as will be seen from its discussion by Mr. Chitty (11 edit., 544 *et seq.*, and the cases there cited in notes) seems to be this: the letter relied on must, in itself, contain the terms of the contract, quantity, quality, and price of the goods, &c., &c., or it must refer to some other paper containing them in such way as by its own terms to connect itself with said paper.    Now, the letter here might possibly be construed as an admission by the defendants that they had ordered certain paints from the plaintiff, and that since said order they had concluded not to take said goods.    But there is nothing in this letter which points distinctly to the contract sued on.    It could as well apply

to any other contract as this, and therefore a most important link is wanting, which could be supplied only by verbal testimony. If the case had gone to the jury, there was no testimony by which the memorandum made by plaintiff's salesman could have been connected with defendants' letter. It was said in *Waterman* v. *Meigs*, 4 Cush., 497: "That a letter from the purchaser to the vendor, alluding to a parol agreement for the sale of goods, and inquiring whether they will be ready at the time agreed upon, but not mentioning the quantity, quality, or price of the goods, or the time of payment, is not a sufficient memorandum to take the agreement out of the statute of frauds." See also *Salmon Falls Manufacturing Company* v. *Goddard*, 14 How., 446; *Bailey* v. *Ogdens*, 3 Johns., 399.

We think there was an absence of all testimony connecting defendants' letter distinctly and clearly with the memorandum made by plaintiff's agent, and sent by him as an order for the goods, so that the two could constitute one memorandum in writing, signed by the defendants. And the letter itself failing to embody the contract as to the quantity, quality, and price of the goods, the non-suit was inevitable. Thus far it has been admitted that the letter of defendants, impliedly at least, acknowledged an order for paints, but there is great doubt whether such is a proper construction of said letter. It may well be construed as a denial of the order. This view strengthens the conclusion we have reached.

Judgment reversed.