## WOODRUFF OIL & FERTILIZER CO. v. PORTSMOUTH COTTON OIL REFINING CORP.

(Circuit Court of Appeals, Fourth Circuit. October 2, 1917.)

No. 1532.

1. FRAUDS, STATUTE OF ⬥⇒158(4)—PROOF OF CONTRACT.

Every essential element of a contract falling within the statute of frauds must be proved by writing.

2. FRAUDS, STATUTE OF ⬥⇒116(6)—AGENCY.

While an agent may bind his principal by a contract of sale in which he is also agent for the buyer when his dual agency is known and the binding nature of written memoranda signed by brokers and auctioneers rest on such rule, written memoranda signed by the representative of a brokerage firm, the members of which as individuals and partners were largely interested in the plaintiff corporation, is not binding on the defendant corporation, which it was contended through the agency of the brokerage firm made a sale to plaintiff falling within the statute of frauds; for when a seller denies the contract the buyer cannot establish it by means of a memorandum which he contended the seller authorized him to execute.

3. FRAUDS, STATUTE OF ⬥⇒158(2)—CONTRACTS—PROOF OF LOST MEMORANDA.

A contract within the statute of frauds may be established by parol evidence of the contents of a lost memorandum signed by the party to be charged.

4. FRAUDS, STATUTE OF ⬥⇒158(2)—ADMISSION OF EVIDENCE.

As the statute of frauds does not require the contract to be in writing, but only that evidence of it shall be in writing and signed by the party to be charged, a written communication to a third person setting out the contract is competent evidence of its terms.

5. FRAUDS, STATUTE OF ⬥⇒158(4)—CONTRACT OF SALE—SUFFICIENCY OF EVIDENCE.

Where the seller's president signed letters and telegrams referring to a sale to the buyer which had signed a memorandum, mailed to the seller, of the terms of the only sale to which the president could have referred, and there was uncontradicted evidence of a letter written by the president to a third person setting forth the sale, there was, though the letter was lost and parol evidence of its contents introduced, sufficient to satisfy the statute of frauds requiring the contract or some memorandum thereof to be in writing and signed by the party to be charged.

In Error and Cross-Error to the District Court of the United States for the Western District of South Carolina, at Greenville; Joseph T. Johnson, Judge.

Action by the Portsmouth Cotton Oil Refining Corporation against the Woodruff Oil & Fertilizer Company. There was a judgment for plaintiff, and defendant brings error, while plaintiff assigns cross-errors. Affirmed.

———

⬥⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

F. B. Grier and J. B. Park, both of Greenwood, S. C. (Grier, Park & Nicholson, of Greenwood, S. C., on the brief), for plaintiff in error and cross-defendant in error.

C. P. Sanders and Henry K. Osborne, both of Spartanburg, S. C. (Sanders & De Pass and Bomar & Osborne, all of Spartanburg, S. C., on the brief), for defendant in error and cross-plaintiff in error.

Before KNAPP and WOODS, Circuit Judges, and DAYTON, District Judge.

WOODS, Circuit Judge. In this action for damages for breach of contract for the sale of cotton seed oil, the main question is whether the plaintiff has so met the requirements of the statute of frauds in the evidence introduced to prove the contract that the judgment in its favor may be sustained. The issue is presented by exceptions to the admission of testimony, and to the charge to the jury.

[1, 2] In September, 1915, W. H. Freund, representative of Aspegren & Co., produce brokers, met W. F. Bryson, president of Woodruff Oil & Fertilizer Company, on the floor of the Produce Exchange in New York, and upon his oral request undertook to sell to plaintiff, Portsmouth Cotton Oil Refining Company, through John Aspegren, its president, two tanks of crude oil for October and November delivery at $4.90 and one tank for December delivery at $4.93. Freund made and signed in the name of Aspegren & Co. a separate memorandum of each sale in the usual form, and mailed a duplicate to each party to be charged. The defendant company having failed to deliver the oil, the plaintiff in this action recovered as damages for breach of the contract the difference between the alleged contract price and the price at the date of contemplated delivery.

The employment of the brokers, their making and signing the contract, and defendant's failure to deliver, would require an affirmance of the judgment without respect to other evidence and questions arising thereunder, if the interest of the brokers in the purchasing corporation did not make their execution of the contract ineffectual to bind the seller. John Aspegren and Adolph Aspegren compose the brokerage firm of Aspegren & Company, and they are respectively president and secretary of the plaintiff corporation. Of the $109,000 stock of the corporation John and Adolph Aspegren own $100 each and Aspegren & Co. $49,800. We think the District Judge was right in holding that, on account of the interest of the brokerage firm in the purchasing corporation, the brokerage firm could not make a memorandum binding on the seller. An agent may bind his principal by a contract of sale in which he is also agent for the buyer when his dual agency is known. The business of brokers and auctioneers and the binding nature of memoranda signed by them rest on this rule. But the rule itself is founded on the presumed absence of any motive in the broker or auctioneer to falsify the agreement or to give either of his principals the advantage. Every essential element of a contract falling under the statute of frauds must be proved by writing. When the seller denies the contract, the buyer cannot establish it by proof that he was buying for himself and that the seller authorized him to

sign for both. The statute of frauds, intended to prevent imposition by one man imputing to another a sale on parol testimony, would be nullified by mere circuity if a party materially interested in making a purchase were allowed to prove by parol that he was authorized to sign the name of the seller, and that the seller knew of his adverse interest. Reed on Statute of Frauds, 369; Leland v. Creyon, 1 McCord (S. C.) 100, 10 Am. Dec. 654; Wilson v. Lewiston Mill Co., 150 N. Y. 314, 44 N. E. 959, 55 Am. St. Rep. 680; Bent v. Cobb, 9 Gray (Mass.) 397, 69 Am. Dec. 295.

[3] While there are numerous exceptions and assignments of error, the conclusion that the defendant was not bound by the memorandum of the brokers standing alone leaves the verdict and judgment dependent on the correctness of the following instruction to the jury:

"Did Mr. Bryson sign the telegram of September 28, 1915? Did he write the letter of September 29, 1915? Did he write to Clapp a letter containing the statement testified to by that witness? If he wrote and signed all those papers, did he sign them and was he acting for the defendant corporation in so doing? The question is for you to decide, it is for you to find the facts. Did the defendant Bryson, as the president of the defendant corporation, act for that corporation and sign the telegram, sign the letter of September 29th, and sign the letter testified to have been addressed to Mr. Clapp? Whether he signed these papers is for you to determine, and whether he was acting in his capacity as the president of the Woodruff Oil & Fertilizer Company, you must determine from the evidence. I charge you that if he signed all of those papers, taken together, they constitute such a writing as would take this case out of the statute of frauds."

Freund, the representative of the brokers, testified that he signed the memorandum of the alleged sale dated September 9, 1915, to the Woodruff Oil & Fertilizer Company, and mailed it to the defendant. The presumption is that it was duly received. On September 28, 1915, Bryson telegraphed to plaintiff, "Send tank to Clinton & Woodruff one each on contracts." The plaintiff answered on the same day that its records showed only one tank sold and asked what sale the other tank was to be applied against. On September 29th, Bryson wrote:

"I sold some oil for either Woodruff or Clinton to your buyer in N. Y. I never signed any contract or have none but want to fill anything you have there we owe you. Advise please at once."

On the next day plaintiff wrote a letter setting out sales for October, November, and December deliveries corresponding with broker's memorandum, saying the request for tanks before time of delivery specified would be referred to its president, and asking whether cars were desired at Clinton or at Woodruff. There was no reply to this letter or to a number of others written by plaintiff concerning the transaction until October when Bryson wrote as president saying that on receipt of telegram of September 28th, in which plaintiff "seemed to say you didn't know anything about any sale except one tank," he sold the oil on hand to another broker. As additional evidence of the sale, plaintiff's witness Clapp testified that in a letter, which he had lost, Bryson while in New York in September, 1915, wrote to him of the sale through Aspegren & Co. of three tanks of oil corresponding to the sales noted in the broker's memorandum.

The evidence of Clapp as to the contents of the lost letter was com-

petent. The statute does not prohibit proof of a contract of sale by parol evidence of the contents of a lost document signed by the party to be charged. 20 Cyc. 317; Van Boskerck v. Torbett, 184 Fed. 419, 107 C. C. A. 383, Ann. Cas. 1916E, 171.

[4] A written communication to a third party setting out the contract is competent evidence of the making of the contract, since the statute does not require the contract to be in writing, but only that the evidence of it shall be in writing and signed by the party to be charged. 20 Cyc. 255; Charlton v. Columbia, etc., Co., 67 N. J. Eq. 629, 60 Atl. 192, 69 L. R. A. 394, 110 Am. St. Rep. 495, 3 Ann. Cas. 402, and authorities cited.

[5] The case before the court then was this: Specific memoranda of sales dated September 9, 1915, signed by the purchaser, mailed to the defendant and presumably received; letters and telegrams from defendant's president in the same month evidencing sales to the plaintiff; evidence on behalf of plaintiff that there were no other sales to which these communications from defendant could have referred; absence of any evidence from defendant tending to show any other transaction to which its communication could have related; uncontradicted evidence of a letter written by Bryson, president of defendant corporation, to Clapp setting out the sales indicated in the broker's memoranda. This was sufficient to satisfy the requirements of the statute of frauds. Louisville, etc., Co. v. Lorick, 29 S. C. 533, 8 S. E. 8, 2 L. R. A. 212; Peay v. Seigler, 48 S. C. 496, 26 S. E. 885, 59 Am. St. Rep. 731. In the former case, under verbal instructions from defendant, plaintiff's salesman sent a written order to plaintiff to ship to defendant a certain amount of paint at a stated price, payable in sixty days. The goods were accordingly shipped, after which plaintiff received a letter signed by defendant, saying: "Don't ship paint ordered through your salesman; we have concluded not to handle it." It was held that the two papers taken together constituted a sufficient memorandum in writing signed by defendant to charge him with a contract of sale. The court said:

"It seems to us, therefore, that the letter of defendants, taken, as it must be, in connection with the order sent to plaintiffs by the salesman, to which it expressly referred, and which was in writing, and specified all the necessary particulars as to price, quantity, quality, and time of payment, constituted a sufficient note or memorandum in writing of the bargain to take the case out of the statute of frauds. In the absence of any evidence that any other order was given, the language of the letter, 'Don't ship paint ordered through your salesman,' must necessarily be regarded as referring to the order of which a memorandum in writing was taken at the time by the salesman, and a copy thereof immediately forwarded to the plaintiff, who at once filled the order and shipped the goods to the defendants."

It was also held in that case and in Beckwith v. Talbot, 95 U. S. 289, 24 L. Ed. 496, that where the terms of a contract are drawn up in writing and signed by one of the parties, and the other afterwards writes an acceptance or recognition of a contract, but not in such terms as to identify it, parol evidence is admissible to show the contract referred to. Ryan v. United States, 136 U. S. 68, 10 Sup. Ct. 913, 34 L. Ed. 447.

It follows that the defendant was not entitled to a directed verdict and that there was no error in the charge. The views and conclusions we have expressed dispose of all other assignments of error.

Affirmed.