16338

FINE v. HALL & CO., INC.

(59 S. E. (2d) 161)

*Mr. Arnold R. Merchant,* of Spartanburg, *for Appellant,*

*Messrs. S. R. Watt and C. E. Daniel,* of Spartanburg, *for Respondent,*

April 11, 1950.

Petition for Rehearing Denied May 12, 1950.

BAKER, Chief Justice.

This is an action for $100,000.00 damages, actual and punitive, brought by the appellant against the respondent for failure and refusal of the latter to comply with the terms of an alleged contract to furnish to the appellant certain stainless steel.

The appellant desired to bid on a contract for the making of certain repairs and improvements in a federal hospital. As claimed by him, he was not familiar with the costs involved in the provision and installation of certain hospital and kitchen equipment which was involved in the job. The stain-

less steel was the principal item of material required in the performance of this part of the job, and the gravamen of the complaint is that the respondent contracted "to procure" for the appellant the stainless steel required in the general contract which he would be required to execute if he became the low bidder.

The appellant is a general contractor. The respondent is a concern whose business included (it may be inferred from the testimony) the supplying of materials of the general character involved in the present action.

It is claimed by the appellant that while he was engaged in the preparation of his bid, the respondent through its agent Jones proposed to supply to ("procure for") the appellant the stainless steel required in the performance of that part of the contract which related to the kitchen and hospital equipment. The discussions at this stage were wholly oral. As the result of these discussions, according to the appellant, the respondent agreed to give the latter a price at which the stainless steel would be supplied, and upon which price the appellant could rely in making up his bid as general contractor for the whole job. The respondent did make such a bid, naming the price of $2.85 per *lineal foot* for the estimated amount of stainless steel required.

Invitations for the making of bids on the whole repair job were issued in the early part of June, 1947. The time fixed for the opening of bids was June 24, 1947. The appellant's bid was mailed to the proper authorities on June 23, 1947, and was among the bids received at the appointed time for opening bids. In making his bid the appellant used as the basis of that part of the job requiring the provision of stainless steel the respondent's figure of $2.85 per *lineal foot* for the estimated amount of stainless steel required for the job, and the appellant added to this figure an additional sum of $4,200.00 as the cost of installation. The total cost thus arrived at by the appellant, and included in his bid for the general contract, was the sum of $6,500.00.

The award of the general contract was made to the appellant, as the lowest bidder, on June 25, 1947. On the same date, but before the award of the contract to the appellant, the respondent's agent Jones telephoned the appellant that he had learned that the figure of $2.85 per lineal foot for the stainless steel, which he had given the appellant, was erroneous, and that the figure should have been $2.85 per *lineal inch*. This information was received by Jones by telegram, on June 25, 1947, from a supplier upon whom apparently Jones was relying to furnish the material. The telegram in question is as follows: "Hall and Co., Spartanburg, So. Car. Jones misquoted on stainless steel tops stop Approximate price for estimate only is $2.85 per inch list instead of per foot subject to discount of 40-5-10. G. E. Johnson and Associate." The appellant, however, did not see this telegram until some time after the award of the bid to him, and had no information as to the alleged error in the figure contained in the bid other than as given in the telephone conversation above referred to.

There is no evidence of the acceptance by the appellant of the respondent's estimate or bid, except as may be implied from the alleged reliance by the appellant upon such estimate in making his own bid as general contractor.

The appellant demanded of the respondent that it furnish the stainless steel at the figure of $2.85 per lineal foot, but this the respondent refused to do, in consequence of which the appellant was compelled to obtain the materials elsewhere. And he alleges that the cost to him of compliance with that part of the general contract which was embraced in the undertaking of the respondent, was $43,000.00. Presumably this included the cost of installation, but no attempt was made in the testimony to separate this item from the total cost stated.

The respondent demurred to the complaint, but the demurrer was overruled by the Circuit Judge. As stated in the transcript, however, this ruling is "not involved in this

appeal, except, as overruling it is assigned as an additional sustaining ground by the respondent."

The respondent thereupon answered, admitting the employment of Jones, but alleged "that this defendant has never stocked or bought or sold stainless steel," and denied the right of Jones to sell or contract on the respondent's account to sell stainless steel. The answer also denied the existence of any contract or agreement between the parties, and specifically denied that there was any "written memorandum" of an agreement signed by the respondent or by anyone authorized to act for it.

At the trial of the case the respondent moved to require that the appellant elect to proceed either on the theory of an action for breach of contract or on the theory of an action for fraudulent breach.

The Circuit Judge ruled that no fraud was alleged, whereupon the appellant elected to proceed on the theory of a breach of contract. To the ruling so made by the Circuit Judge exception has been taken, but in view of our conclusion that the record does not disclose the making of a legally effective contract, this phase of the case need not be further referred to.

Thereupon the appellant moved for a voluntary nonsuit. The motion was denied by the Circuit Judge.

The granting or refusal of such a motion, under the circumstances of this case, is a matter within the discretion of the trial Court, and we find nothing in the record to indicate an abuse of this discretion or to warrant our further dealing with appellant's exception relating to this subject. *Cunnigham v. Independence Ins. Co.,* 182 S. C. 520, 189 S. E. 800.

At the close of the appellant's case, the respondent moved for an order of nonsuit, principally upon the grounds that the appellant had failed to prove the existence of a contract between the parties; that he had proven no damages; and

that the alleged contract comes within the provision of the Statute of Frauds, and not being in writing, was not enforceable.

Other questions were raised in the course of the trial, but the disposition herein made of the issues above indicated renders a discussion of the other questions unnecessary to a proper disposition of the litigation.

The crux of the controversy between the parties, as deduced from the pleadings and the testimony, is this:

The plans and specifications upon which the appellant's bid as general contractor was made provided for numerous articles of kitchen and hospital equipment which were to be fabricated in the main out of stainless steel. It is deducible from the testimony that the quantity of stainless steel required for this purpose could be determined from the specifications covering the kitchen and hospital equipment. The plans and specifications were before the respondent when the discussions between the parties which led to the respondent's proposal were under way, and the appellant understood that the respondent was naming a price for the stainless steel that would include the fabrication and construction of the kitchen and hospital equipment, with nothing further to be done by the appellant than to install the same.

The respondent, on the other hand, understood that he was proposing to supply the necessary quantity of stainless steel, at a stated price, and that the fabrication and construction of the equipment would not be within the scope of his proposal.

The testimony is not susceptible of any other construction than that the parties had different understandings of the matter as above set forth, and this conclusion is fortified by the undisputed fact that the price per lineal foot of the raw material, which the respondent understood it was furnishing, amounted only to about $1,300.00, whereas the cost of the material and of the farbrication and construction of the same

to conform to the plans and specifications, represented an actual outlay by appellant of $43,000.00.

It is difficult to perceive how an experienced general contractor could have failed to understand that the defendant was proposing to furnish only the raw material in the form of stainless steel, and not the large number of manufactured items constituting the kitchen and hospital equipment in question, when resort is had to the contents of the plans and specifications. As stated therein: "The work covered by this section of the specifications consists of furnishing all plant, labor, equipment, appliances, and materials, and performing all operations in connection with providing and setting in place all items of Kitchen and Hospital equipment as described hereinafter and as particularly described on the various plans and schedules designated by the prefix 'CF', and setting in place of Government furnished equipment designated by the prefix 'QM', in strict accordance with this section of the specifications and the applicable drawings and subject to the terms and conditions of the contract."

Among the items to be installed, as stated in the specifications, and described therein in detail, were sinks, work tables and counters, cabinet cases and doors, shelves, dish and drain tables, kitchen and cafeteria equipment, salad counter, wall cabinet, vegetable sink, medicine cabinets, etc. Most of these units are required under the specifications to be constructed of stainless steel. The "gauge" of the steel is specified, and varies materially for the different units.

Eliminating matters that relate strictly to the field of installation, the specifications show that the required materials include such items as copper tubing, brass, galvanized iron, galvanized iron pipe, plate glass, hinges and other hardware, no mention of which was made in the dealings between the parties.

Thus as one phase of the case, the controversy presents a situation in which it is apparent that the appellant and the respondent had entirely different conceptions of the scope of

the respondent's proposal, and that whatever else might be true of the contractual situation here, there was no meeting of minds as to the job proposed to be undertaken by the respondent. In the absence of any writing, or of any claim of representations on the part of the respondent that its bid contemplated the fabrication of the articles in question, as well as the provision of the required stainless steel, it cannot be contended that there was present in the dealings between the parties that mutual understanding of the subject matter of their dealings which is a fundamental prerequisite to the creation of a binding contract. (See cases hereinafter cited.)

But another phase of the contractual situation seems to us to be fatal to the claim of the appellant.

Viewing the respondent's proposal in the above light, that is, as a proposal to furnish stainless steel, and nothing else, at a stated price per lineal foot, how can any contractual undertaking arise out of a proposal to furnish stainless steel at a stated price per lineal foot, when nothing in the record tends to disclose what is meant by such a quotation? What does a "lineal foot" of stainless steel represent? Throughout the plans and specifications, the "gauge" of the steel, in varying figures for different articles, is specified. Does the naming of a price per lineal foot as given by the respondent furnish a basis upon which to determine the thickness, width or design of a foot of stainless steel to be provided? Obviously a price per foot would vary according to whether the steel is to be furnished in flat strips or rounded or otherwise partially fabricated and according to the width of the strips to be furnished, and according to the thickness of the strips.

It may be, of course, that there is some custom in the trade under which a bid or offer to furnish stainless steel at so much per foot implies answers to the foregoing questions, on a basis somewhat similar to that used in the measurement of timber on a footage basis; but there is no testimony in the record to show that such is the case in the industry now involved.

In this light it seems to us that on elementary principles of law it must be concluded that the alleged contract is so indefinite in its terms as not to be susceptible of enforcement on the basis of the testimony in the present record.

But independently of the foregoing and of other controverted issues that arose during the trial, it appears to us that there is such a noncompliance with the requirements of the Statute of Frauds as to render the contract unenforceable.

The defense of noncompliance with the Statute is made in the answer of the respondent, and was relied upon by it in its motion for a nonsuit.

This defense encompasses not only the absence of any writing to comply with the Statute, but also the absence of sufficient stipulations between the parties, either oral or written, to make out a complete and binding contract. See, for example, *Harby v. Wilson,* 106 S. C. 7, 90 S. E. 183; *Lousivlle Asphalt Varnish Co. v. Lorick and Lowrance,* 29 S. C. 533, 8 S. E. 8, 2 L. R. A. 212; and *Pitts v. Edwards,* 141 S. C. 126, 139 S. E. 219.

The South Carolina counterpart of the applicable provision of the Statute of Frauds, Code, Sec. 7045, renders unenforceable any contract for the sale of any goods, wares and merchandise for the price of $50.00 or upwards unless one or more of the following conditions are present:

(a) That the buyer has accepted part of the goods so sold, and atcually received the same; or

(b) That the buyer has given "something in earnest to bind the bargain, or in part payment"; or

(c) That "some note or memorandum in writing of said bargain be made and signed by the parties to be charged by such contract, or their agents thereunto lawfully authorized."

Admittedly there is no evidence of any part payment or any receipt by the appellant of any part of the materials in question.

That there is no written contract between the parties signed by the respondent or by anyone on its behalf is not denied.

The claim of the appellant in this regard appears to be that the transaction involved in the present case does not come within the Statute because the contract was not one for the sale of the stainless steel, but was merely a contract on the part of the respondent to *procure* the stainless steel for the appellant. In this connection reliance is placed by the appellant upon the admitted fact that the respondent did not carry a stock of stainless steel, and would have had to procure it from some other source.

While the argument has some superficial plausibility, we do not deem it consistent with either logic or legal principle to distinguish the arrangeemnt in a case of the present character from an ordinary case of the sale of merchandise.

If A goes into a store which does not carry in stock the particular article desired by him, and he requests the store to *procure* the article for him, certainly it would not be contended that the transaction between the parties did not consist of a purchase by A, and a sale by the store. That is precisely, in principle, the persent case.

It is well within the scope of the general business of the respondent to procure stainless steel for its customers. Its undertaking to do in the present case, and to procure materials for the appellant and other customers in other cases disclosed by the testimony, shows this.

The transaction was not, as perhaps the appellant means to imply, a contract under which the appellant designated the respondent as its agent. None of the elements of such a transaction are present.

The respondent's undertaking, as contended by the appellant himself, was to furnish the steel at a stated price, which would involve a profit to the respondent; the respondent was not to receive any compensation, directly or indirectly, on

the theory of agency for the appellant. The appellant would be the first to deny that the respondent had any capacity or authority, as agent, to enter into a transaction that would bind the appellant.

Nor do we think that the appellant is on sound ground when he asserts that a binding contract can be created out of a letter offered in evidence, signed by the respondent, requesting from another dealer "estimate, delivery date with prices and discounts" covering "kitchen and hospital steel equipment * * * for Stainless Steel Ware." This letter is dated July 2, 1947, and is addressed to Acme Metal Products Corporation, which presumably is a supplier of stainless steel.

The lower Court refused to permit the appellant to introduce this letter in evidence, but even if it had been admitted, it could not in any sense be said to constitute either a partial or an entire compliance with Code Section 7045 hereinabove referred to.

The conclusions above expressed render it unecessary to deal with the exceptions other than those covered above.

The order appealed from is affirmed.

FISHBURNE, STUKES and OXNER, JJ., concur.

TAYLOR, J., concurs in result.

Order on Petition for Rehearing.

PER CURIAM.

Counsel for the appellant earnestly contends that the opinion filed in this case discloses that the Court "misapprehended the pleadings and evidence and without either pleadings or evidence concluded that the respondent contended that it gave the appellant quotations for an estimated amount of stainless steel," rather than for the thirty-one separate articles to be fabricatd and manufactured for use in connection with the construction job undertaken by the appellant. While we think that the petition of appellant merely reiterates the argument of counsel as passed upon in the opinion

filed, we will state briefly our reaction to the case attempted to be made in the petition.

The burden of appellant's argument on this point is that there was testimony from which it reasonably could be concluded that respondent's bid covered the manufactured articles, rather than merely the quantity of stainless steel required in the production of the same, and that therefore the case should have been submitted to the jury. Neither the complaint nor the testimony bears out this contention.

In paragraph 5 of the complaint it is alleged that the respondent asked to be permitted to procure for the appellant "the stainless steel called for in the plans and specifications * * *," and that "the plaintiff (appellant) agreed to let the defendant procure the stainless steel."

In paragraph 6 of the complaint it is alleged that the respondent "agreed to procure the stainless steel necessary to complete the repairs as per plans and specifications mentioned above at a price to plaintiff of two and 85/10 ($2.85) dollars per lineal foot." And again, that at the price quoted, the "the stainless steel, as outlined in plans and specifications, would have cost the plaintiff the sum of thirteen hundred fifty-three ($1,353.00) dollars plus approximately forty-two hundred ($4,200.00) dollars for installation."

In paragraph 9 of the complaint it is alleged that in reliance upon the "representations, promises and agreements of the defendant, its agent and servants, the plaintiff called upon the defendant to obtain for the plaintiff the stainless steel as specified in the plans, specifications and contract * * *" and that "the defendant failed and refused to procure for the plaintiff the stainless steel * * *."

There can be no doubt about the fact that in framing his statement of his cause of action, the appellant rested upon his claim that the alleged bid or agreement to provide stainless steel for a job which included the manufacture of articles made principally of stainless steel, constituted an agreement or bid to produce the manufactured articles, rather than for

merely the material out of which such articles were to be made. The primary question in the case is whether there is any testimony pointing to the fact that this also was the understanding of the respondent in making its bid.

There is no testimony whatsoever tending to show, or from which it can be reasonably inferred, that at the time of making its bid the respondent understood that it would be expected to provide anything other or more than the stainless steel product, of the quantity and quality required for the manufacture of the articles which the appellant was undertaking in his bid as general contractor to produce and install.

The testimony of the appellant accords with the allegations of his complaint in that he stated that the respondent gave him a bid for the stainless steel. He does not assert that either verbally or in writing the respondent ever agreed to manufacture or procure to be manufactured the stainless steel into the thirty-one articles required.

It is true that in the discussion of the matter between the parties the plans and specifications relating to the manufacture and installation of the articles in question were given to the respondent. But it does not follow from this that anything more than the provision of the stainless sttel was the proposed undertaking of the respondent. The plans and specifications enabled the respondent, as they did the appellant, to determine the approximate quantity of stainless steel that would have to be provided. They, however, have no bearing upon the contractual status of the negotiations between the parties in respect to matters of fabrication and manufacture. If any other purpose was in the mind of the appellant, there still is nothing in the testimony to disclose or from which it can be inferred that the respondent had such purpose in mind or that any attempt was made to convey such purpose to it.

Since the appellant's main contention is that in the light most favorable to the respondent, there is at least an uncertainty as to what the terms of the contract were, the case

should have been submitted to the jury so that they, rather than the Court, may draw whatever reasonable inferences are deducible from the testimony, it should be pointed out that the appellant knew that the respondent was not a manufacturer of the articles in question. He was a "plumbing and heating man." And although the plans and specifications called for the manufacture and installation of thirty-one pieces of equipment which shall be "equal to that of the S. Blickman Company" (apparently an expert in this particular field), the appellant does not claim to have consulted the Blickman concern, or even to have asked for any other bid than that which he received from the respondent. Nor is it anywhere in the record asserted by the appellant that the respondent undertook to ascertain the meaning of the requirement that the required articles be "equal to that of the" Blickman concern.

In the same light mention might be made of the fact that in spite of the appellant's assertion of complete ignorance of prices and costs in the construction field in question, he had sufficient knowledge and information to enable him to determine from the specifications covering the equipment to be manufactured and installed, the number of lineal feet of stainless steel that would be required.

When we add to these considerations the fact that the appellant actually paid, as he claims, $43,000.00 for the stainless steel equipment which he asserts was covered by the bid of less than $1,400.00 made by the respondent, without any suggestion that the amount so paid by him was an excessive charge which could be exacted from him because of the failure of the respondent to comply with his bid, the only reasonable inference that we can deduce is that the appellant understood that the bid which he received was not a bid for the *production and manufacture* of the required equipment.

But even if we give the appellant the benefit of any slight doubt that it may be argued arises out of the record as to

the understanding and intent of the appellant, we are still of the opinion that as to the respondent, no other reasonable inference can be drawn than that the respondent understood that he was bidding on a contract to only procure and provide stainless steel of a quantity sufficient to manufacture the articles in question, but without any thought of manufacturing the same.

Thus, as we view the case, the minds of the parties never met and there was no contract.

The petitioner makes the further point that the applicability of the Statute of Frauds was not properly before the Court and that if he is in error about this, the Statute should have been held by us to be inapplicable. These questions are rendered immaterial by our holding that the dealings between the parties did not achieve a contractual status. It suffices to say on this phase of the case that the opinion filed is not to be deemed as holding that the Statute of Frauds is applicable to a contract to procure merchandise which is not in being, and which within the terms of the contract (and therefore within the legal contemplation of the parties) is to be manufactured. Here we are holding that the terms of the alleged contract required only the procurement and delivery of materials, not of articles to be manufactured.

Other questions are made by the petition, but under the views expressed in the opinion filed, and above, these questions do not affect the result.

The petition for a rehearing is refused.

Let this order be reported with the opinion heretofore filed.